**Tim MOORE, Petitioner-Appellant,**

v.

**Jack DUCKWORTH, Warden, et al., Respondents-Appellees.**

No. 81–1828.

United States Court of Appeals, Seventh Circuit.

Argued June 7, 1982.

Decided Sept. 2, 1982.

Giles A. Franklin, Chicago, Ill., for petitioner-appellant.

Kermit R. Hilles, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before CUMMINGS, Chief Judge, POSNER, Circuit Judge, and DECKER, Senior District Judge.*

CUMMINGS, Chief Judge.

On November 7, 1977, 16-year-old Falise Bronston and her boyfriend Anthony Scott took a ride with 22-year-old Tim Moore in his car. After several hours of aimless driving about northwestern Indiana, Moore assured Scott that he would take Falise home immediately and then dropped Scott off. Moore did not take Falise home immediately, but again drove aimlessly while asking her to have sex with him. Falise refused and Moore drove behind an abandoned building in order to force Falise to comply. As Moore was attempting to park alongside a telephone pole that would have blocked the car door on the passenger side, Falise escaped. Moore chased her and when he caught Falise he struck her in the face and chest. The fight continued until Moore picked up a baseball bat that was lying on the ground and threatened to beat Falise to death if she did not have sex with him. Falise then returned to the car with Moore and they drove to the rear of another abandoned building. Moore beat the back

---

* The Honorable Bernard M. Decker, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

of Falise's car seat with the bat while urging Falise to remove her clothes quickly. Falise removed her clothing and Moore raped her in the back seat of the car. Moore then drove Falise to a relative's house and she ran to her boyfriend· Scott's house and from there was taken to a hospital. Doctors at the hospital found bruises on Falise's neck and hand, and samples of vaginal fluid disclosed the presence of spermatozoa.

Some six months later, Moore was tried and convicted of rape, and sentenced to twenty years imprisonment. At the time of trial, Falise was also about six months pregnant, not by the rape but by her boyfriend Scott. The State moved in limine to prevent the jury from being told that Falise was pregnant. The trial judge granted the motion based upon Indiana's Rape Shield Law, Ind.Code § 35–1–32.5–1 (1978), which provides:

> In a prosecution for a sex crime as defined in IC 35–42–4, evidence of the victim's past sexual conduct, opinion evidence of the victim's past sexual conduct, and reputation evidence of the victim's past sexual conduct, may not be admitted, nor may reference be made thereto in the presence of the jury, except as provided in this chapter.

The law provides for two exceptions—inapplicable here—for evidence of past sexual conduct with the defendant and evidence that someone else committed the crime. Ind.Code § 35–1–32.5–2 (1978).

The trial court recognized the possible prejudice to Moore if the jury discovered Falise was pregnant and was not told that Moore was not the father. To prevent the jury from noticing Falise's pregnancy, the trial judge examined her appearance and determined that the pregnancy would not show if she sat close to the prosecutor's table, placed her coat over her lap, and "kept her hands like that." Record at 81. The judge also admonished Falise from eating in the court cafeteria when the jury was there. Record at 105. Falise never stood up in the presence of the jury. Each time that Falise had to move about the courtroom the jury was excused. The first

time the judge excused the jury for the purpose of Falise's exit, he said:

> Now, there will be a number of questions in your mind about what is going on. That occurs in every trial. We can't give you an explanation now. Keep these in the back of your mind and at the end of jury service, all your questions will be answered.
>
> I am sure it will be to your satisfaction. I see some questions on your faces. Don't worry·about it until—I will tell you what happened after it is all over and the reasons why it is being done the way it is. All right.

Record at 89. The judge also indicated his willingness to adopt a new procedure to prevent prejudice to Moore if the jury learned during the course of the trial that Falise was pregnant. Record at 82, 105. The trial judge asked counsel for Moore if he had any alternative suggestions for concealing the fact of Falise's pregnancy, but he had none.

■ At the close of the evidence the judge told the parties that juror number twelve had requested either to know or to see how tall the victim was. Following discussion with counsel, the judge decided not to respond to the request because Falise already had testified to her height and weight. After the jury returned a guilty verdict, the jurors were polled regarding Moore's guilt but Moore did not request that they be polled or otherwise questioned regarding their knowledge that Falise was pregnant. Under Indiana procedures, polling the jury is an acceptable and indeed sometimes required means of testing for prejudice. *Follrad v. State*, 428 N.E.2d 1201, 1202 (Ind.1981); *Liddle v. State*, 260 Ind. 548, 550, 297 N.E.2d 801, 802 (1973).

Moore appealed to the Indiana Supreme Court, arguing that this particular application of the Rape Shield Law denied him a fair trial. The Indiana Supreme Court affirmed his conviction on two grounds. First, the Court stated that Moore waived his claim of unfairness because he could have moved to postpone his trial until Falise delivered her child. Second, the Court

found as a matter of fact that Moore failed to prove that the jury was aware of Falise's pregnancy. *Moore v. State*, 393 N.E.2d 175, 176, 177 (Ind.1979). Moore then filed this petition for a writ of habeas corpus in the district court, and the district court denied it for the same reasons as given by the Indiana Supreme Court. Moore now appeals. We affirm.

There are essentially two issues on appeal: should Moore have asked that the trial be postponed until Falise gave birth, and is this Court bound by the Indiana courts' finding that the jurors did not know Falise was pregnant? We can assume, but do not need to decide, that if the jury knew Falise was pregnant and if Moore did not waive his right to complain by failing to request postponement of the trial, then Moore's trial was unconstitutionally unfair.[1]

We agree with Moore that it probably would be unfair to require him to seek to postpone the trial until Falise gave birth as his only means of preventing the prejudice of the pregnancy going unexplained. Moore was unable to post bail and consequently remained imprisoned pending trial. Given that Falise was approximately six months pregnant at the time of trial and allowing another month after birth for Falise's recovery and rescheduling of the trial, Moore would have had to wait in jail an extra four months until he could be tried. Moore's brief on appeal calculates the probable delay as four months, and the State does not contradict that estimate. Four months in jail is a high premium to pay for the right of avoiding the prejudice of Falise's pregnancy compared to what would seem to be the simple and immediate way of dispelling the potential prejudice by telling the jury the truth. While we cannot require that Indiana provide Moore with the fairest of possible procedures, the distance from fairest to what will be tolerated as minimally fair decreases with the increasing ease of providing the former.

■ Unfortunately, as the Indiana Supreme Court has interpreted the Rape Shield Law, the simple solution is unavailable. To us, a stipulation or judicial instruction that Falise's pregnancy was due to someone other than Moore would hardly seem to be "evidence of the victim's past sexual conduct" of the sort that the Rape Shield Law was designed to make inadmissible.[2] In any event, a narrow judge-made exception from the Rape Shield Law for cases like this would seem appropriate in order not unduly to prejudice defendants such as Moore.[3] But the Indiana Supreme Court in Moore's case held that the Rape Shield Law prevents admission of "[a]ny evidence of the victim's past sexual conduct, including the fact of this victim's pregnancy," 393 N.E.2d at 177, and we cannot second-guess that Court's construction of Indiana law.

Nevertheless, the absurdity of the Rape Shield Law here cannot be overlooked if it denied Moore a fair trial. In order for Moore to present the question of fairness, he must first show that the trial judge's ad

---

1. The Indiana Supreme Court similarly stated that it would have reached a different result "had [Moore] established direct evidence that one or more jurors became aware of the victim's pregnant condition * * *." 393 N.E.2d at 177. Moore's only defense was nonoccurrence, and pregnancy is conclusive proof that something occurred.

2. "Proponents of [the Indiana Rape Shield Law] hoped to 'protect a prosecutrix from ... baseless, irrelevant, and grotesque harassments,' and to encourage victims of sex offenses to report the crimes, free of the fear of being harassed or humiliated when put on the witness stand." Raphael, *1979 Survey of Recent Developments in Indiana Law: Criminal Law and Procedure*, 13 Ind.L.Rev. 197, 207 (1980) (quoting Act of April 11, 1975, Pub.L.No. 322, 1975 Ind. Acts 1768).

3. See Note, *Indiana's Rape Shield Law: Conflict with the Confrontation Clause?* 9 Ind.L. Rev. 418 (1976) (not followed as to violation of Confrontation Clause in the circumstances of *Finney v. State*, 385 N.E.2d 477, 479–480 n.1 (Ind.1979)); *cf.* Ohio Rev.Code Ann. § 2907.-02(D) (Page 1982): In rape trials, "[e]vidence of specific instances of the victim's sexual activity, [etc.] shall not be admitted * * * unless it involves evidence of the origin of * * * pregnancy, * * * [and] the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

hoc attempts to conceal Falise's pregnancy were unsuccessful. The Indiana Supreme Court found that the record did not indicate the jury knew Falise was pregnant. The State argues that we are bound by this finding under *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722, which held in part that the "presumption of correctness" due state court fact-finding under 28 U.S.C. § 2254(d)[4] applies to fact-finding by state appellate as well as state trial courts. 449 U.S. at 545–547, 101 S.Ct. at 768–769. The State's argument must be accepted unless as Moore argues the Indiana Supreme Court's conclusion that the jury was unaware of the pregnancy is "not fairly supported by the record." 28 U.S.C. § 2254(d)(8). Moore does not appear to be contending he lacked an adequate opportunity to develop the facts, nor could he successfully in light of the trial court's eagerness to listen to Moore's suggestions for accommodating the Rape Shield Law and to adopt different procedures if the jury learned of the pregnancy, and Moore's own failure to question the jurors after trial.

Moore cites three facts in the record which he argues establish that the jury knew Falise was pregnant: (1) juror twelve asked to see Falise stand (or to be told how tall she was) although Falise had already testified how tall she was, (2) the trial judge suggested to the jurors that they might have questions during the trial which could not be answered until the trial was over, and (3) Falise was the only witness not to stand or be sworn before the jury. None of these facts strongly entails that the jury knew Falise was pregnant. Asking to see or be told how tall Falise was, even if evidence of her height was already admitted, supports only the conclusion that one juror was concerned with her height. Since that juror demonstrated the requisite boldness to send a note to the judge, having done so regarding only Falise's height mildly supports the inference that the juror was unconcerned about whether Falise was pregnant; if juror twelve wanted to know whether Falise was pregnant, seemingly she would have asked. Similarly, the trial judge's suggestion that the jurors might

4. Section 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:

And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.

have then-unanswerable questions in no way suggested that Falise was pregnant, and any heightening of the jury's awareness during the proceedings probably helped Moore as much as hurt him.

The procedure of excusing the jury each time that Falise changed positions in the courtroom, on the other hand, is slightly more troublesome. This clumsy and unnecessary procedure may well have appeared fishy to some jurors, although again the connection with pregnancy is so remote as to be only speculation. Balanced against the absence of more direct evidence that the jury knew Falise was pregnant and the trial judge's belief that the jury did not know (which is implicit in his adopting no new corrective procedures), the awkwardness of the trial judge's proceedings does not persuade us the jury knew Falise was pregnant. The Indiana Supreme Court's finding that the jury was unaware of the pregnancy is thus fairly supported by the record.

Moore did not get the fairest trial possible, but he has not proved that he was unfairly prejudiced. Although we have denied relief to the appellant here, the problem raised by the mechanical application of Indiana's Rape Shield Law to the special circumstances of this case is serious enough to warrant the attention of the Indiana legislature. An amendment lifting the shield to cover cases such as this would obviate the problem in the future.

Affirmed.