Lonnie K. STEPHENS, Petitioner–
Appellant,

v.

Charles B. MILLER, Warden, and
Attorney General of the State of
Indiana, Respondents–Appellees.

No. 91–1690.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 19, 1991.

Decided March 26, 1993.

As Amended May 21, 1993.

Order Granting Rehearing En Banc
June 9, 1993.

Robert G. Forbes (argued), Forcum & Forbes, Hartford City, IN, for petitioner-appellant.

Ronald J. Semler, Asst. Atty. Gen. (argued), Office of the Attorney General, Indianapolis, IN, for respondents-appellees.

Before CUMMINGS and RIPPLE, Circuit Judges, and REYNOLDS, Senior District Judge.[1]

REYNOLDS, Senior District Judge.

A jury found Lonnie Stephens ("Stephens") guilty of attempted rape. The Indiana Supreme Court, 544 N.E.2d 137, with two justices dissenting, affirmed the conviction. Stephens then petitioned the United States District Court, Northern District of Indiana ("district court"), for a writ of habeas corpus. Stephens argues that the trial judge incorrectly excluded a portion of Stephens' testimony. The testimony concerned the specific contents of a conversation Stephens alleges took place during the incident from which the attempted rape allegation arose. On February 8, 1991, the district court denied Stephens' petition for a writ of habeas corpus, concluding that Stephens' Sixth Amendment right to testify was not violated when the trial court excluded the testimony. The district court further concluded that even if Stephens' Sixth Amendment rights were violated, the error is harmless because Stephens lacked credibility and his version of the incident is virtually impossible, 756 F.Supp. 1137.

Stephens appeals the district court's denial of his petition for a writ of habeas corpus. For the reasons discussed below, we grant Stephens' petition.

## I. FACTS

On March 17, 1987, Stephens and his friend, David Stone ("Stone"), did automotive work together during the day and later went out drinking. Apparently Stone

1. The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

dropped Stephens off that evening at Melissa Wilburn's ("Wilburn") trailer.[2] Stephens and Wilburn gave vastly different accounts at trial regarding the events that followed.

Stephens' version as told at trial[3] recounts an incident of consensual sexual intercourse. Stephens had previously talked with Wilburn, who told him that she was separated from her husband and had moved. Wilburn invited Stephens to visit her sometime. On the evening of March 17, 1987, Stephens told Stone to take him to Wilburn's trailer because he was drunk and did not want to go home in that condition. When Stone dropped Stephens off at the trailer, Stephens knocked on the door and Wilburn let him in. Wilburn told Stephens she could take him home, so Stephens told Stone to leave.

When Stephens entered the trailer, Wilburn's son was asleep on the couch so Stephens carried him to bed. Wilburn's sister, brother-in-law, and their child were also sleeping in the trailer. None of them arose while Stephens was present. Stephens and Wilburn talked in the living room, and Wilburn told Stephens he could kiss her. The two engaged in foreplay and decided to have sex. While engaged in intercourse, Stephens made a comment about Wilburn's sexual practices[4] that made Wilburn angry and she told Stephens to stop. Stephens stopped, got dressed, and left the trailer. He heard Wilburn call her sister as he was leaving.

Because it was cold, Stephens began to run as he neared a highway on his way home. He went to an acquaintance's house and told the people there that he was coming from the liquor store where Stone had left him. Stephens made no mention of being at Wilburn's trailer.

In contrast, Wilburn testified that Stephens was an unwelcome guest who attempted to rape her. On the evening of the incident, Wilburn was sleeping on the couch when Stephens entered the trailer uninvited. Stephens then proceeded to make sexual advances which Wilburn rebuffed, and Wilburn said he should leave. Wilburn yelled her sister's name three times; she yelled the loudest the third time. Stephens said he would use the bathroom and then leave. When Stephens returned from the bathroom, he threw Wilburn on the couch, got on top of her, held her arms, covered her mouth when she tried to scream, and unfastened his pants. Stephens also tore Wilburn's shirt and bra in the process. Wilburn struggled and eventually pushed Stephens off, and he fell to the floor. Wilburn ran to the room where her sister and brother-in-law were sleeping, and Stephens ran out of the trailer.[5] Wilburn had handprints on her face following the incident.[6]

After Stephens left, Wilburn's sister and brother-in-law arose, and Wilburn called her estranged husband. He arrived at the trailer approximately two hours later, and got into a fight with the brother-in-law. Because of the fight, the sister called the police. When the police arrived, the situation had calmed down. No one mentioned the incident with Stephens to the police.

The next day, Wilburn's landlady complained about the police presence. Wilburn said something regarding switching partners with a couple.

---

2. On direct examination, Stone testified that he dropped Stephens off at Hughe's Pic a Pac Liquor Store. On cross-examination, Stone admitted that Stephens had asked Stone to lie and that Stone had really dropped Stephens off at Wilburn's trailer.

3. Stephens gave a number of different versions of the incident to various people prior to trial. These versions, however, were not given under oath.

4. Stephens testified during an offer of proof that they were engaged in intercourse "doggy fashion" and he said to her "Don't you like it like this? ... Tim Hall said you did." (Trial Tr. at 1278.) Additionally, Stephens claims that he

5. Wilburn's brother-in-law testified that he saw a man in a red shirt and blue jeans running away from the trailer. In contrast, Stephens testified that he did not run as he left the trailer. Wilburn testified that Stephens was wearing a red T-shirt and jeans. Witnesses who saw Stephens later that evening also testified that Stephens was wearing a red shirt and jeans. Stephens initially told the investigating officer that he was wearing something else that evening.

6. Wilburn's sister testified that she also saw the handprints following the incident.

told her the police were summoned because Stephens had entered her trailer uninvited. Wilburn testified that the landlady said she should file a police report. Wilburn testified that she did not know that attempted rape was a crime because it was not a "completed act." Later that afternoon, Wilburn reported to the police that Stephens had attempted to rape her.

## II. ANALYSIS

This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 2253, which provides that a final order issued by a district judge is subject to review by the United States Court of Appeals for the circuit in which that district court is situated. The issues presented by Stephens to this court are whether (1) the Indiana Rape Shield Statute prohibits Stephens' testimony regarding the *res gestae* of the offense and (2) the Indiana Rape Shield Statute is unconstitutional if it precludes Stephens' testimony. In addition, we must determine whether the trial court's refusal to allow Stephens to testify, if erroneous, was nevertheless harmless.

The Indiana Rape Shield Statute states in relevant part:

> In a prosecution for a sex crime as defined in IC 35–42–4:
>
> (1) Evidence of the victim's past sexual conduct;
>
> . . . .
>
> (3) Opinion evidence of the victim's past sexual conduct;
>
> . . . .
>
> (5) Reputation evidence of the victim's past sexual conduct;
>
> . . . .
>
> may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter.

Ind.Code Ann. § 35–37–4–4 (Burns 1985) ("the Rape Shield Law"). Indiana has legitimate interests in protecting rape vic-

tims, which can be met by the Rape Shield Law. *See Moore v. Duckworth*, 687 F.2d 1063, 1065 n. 2 (7th Cir.1982); [7] *Thomas v. State*, 471 N.E.2d 681 (Ind.1984).

### *Exclusion of the Testimony*

■ The trial judge allowed Stephens to testify that he said something to Wilburn during intercourse which made her angry. The trial judge did not allow Stephens to testify regarding the specific contents of the conversation, ruling that the Rape Shield Law barred the testimony. Stephens argues that the conversation's contents go to the *res gestae* of the offense; the purpose of the testimony was to show what occurred during the incident, not to bring in evidence of Wilburn's past sexual conduct. Stephens' defense was that he and Wilburn engaged in consensual sexual intercourse. His testimony was offered to support his theory that when he made the statements, Wilburn became so angry that she told him to leave and fabricated the rape accusation. Stephens seeks to treat the testimony as hearsay, arguing that the jury could easily have been instructed that the testimony was not being offered for its truth.

The district court concluded that the trial judge properly balanced Stephens' Sixth Amendment right to testify with the procedural limitations imposed by the Rape Shield Law. The district court agreed with the trial court that Stephens should have filed a written motion to introduce the conversation pursuant to Ind.Code § 35–37–4–4(b), which provides:

> (b) Notwithstanding subsection (a) evidence:
>
> (1) Of the victim's or a witness's past sexual conduct with the defendant;
>
> (2) Which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded;
>
> (3) That the victim's pregnancy at the time of trial was not caused by the defendant;

---

**7.** In *Moore,* this court questioned "the mechanical application of Indiana's Rape Shield Law to the special circumstances" presented in that case. *Moore* at 1067. In that case, the trial court attempted to prevent the jury from discovering that the rape victim was pregnant; she was pregnant not as a result of the rape. The Rape Shield Law at the time did not address such a situation; it was subsequently amended in 1983.

may be introduced if the judge finds, under the procedure provided in subsection (c) of this section, that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

Subsection (c) provides that a written motion be filed at least ten days before trial, a hearing be conducted, and the court enter an order regarding the specific treatment of the evidence at trial.

The district court states that this procedure should have been followed to offer evidence of an exception to the Rape Shield Law. Stephens' testimony, however, does not fall into the categories defined by § 35–37–4–4(b). Failure to follow the statutorily-prescribed procedure therefore does not preclude Stephens' testimony regarding the conversation's contents.[8]

■■ An accused in a criminal trial has a right to offer testimony in support of his defense, including his own testimony. *Rock v. Arkansas,* 483 U.S. 44, 51–53, 107 S.Ct. 2704, 2708–10, 97 L.Ed.2d 37 (1987); *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Such a right to testify in one's defense stems from the Fourteenth Amendment's guarantee against deprivation of liberty without due process of law; the Compulsory Process Clause of the Sixth Amendment, as applied to the States by the Fourteenth Amendment; and is a corollary of the Fifth Amendment's guarantee against compelled testimony. *Rock* at 51–53, 107 S.Ct. at 2708–10. In this case, the conversation's contents are intimately related to the events that took place on March 17, 1987, and provide the foundation for Stephens' entire defense.

Stephens did not propose to offer the testimony as evidence of Wilburn's past sexual conduct; rather, he sought to introduce the conversation as an explanation of the incident, and to support his argument that he made Wilburn so angry that she fabricated the rape accusation. Without the testimony regarding the conversation's contents, Stephens' defense to the attempted rape charge was substantially weakened. Had Stephens told the jury what he allegedly said to Wilburn during consensu-

al intercourse, the jury may have reached a different conclusion regarding Stephens' guilt.

■ We agree with the two dissenting justices of the Indiana Supreme Court that Stephens' Sixth Amendment right to testify on his own behalf guarantees him the right to tell a jury a full account of his version of the incident, including the specific contents of the conversation. The exclusion of Stephens' testimony under the Rape Shield Law was not constitutionally permissible. Stephens had the right to present his defense; the limitation on his testimony deprived him of a fair trial.

*Harmless Error*

■ 28 U.S.C. § 2111 provides that "[o]n the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." Constitutional errors may be deemed harmless in certain circumstances. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). A constitutional error is not harmless if it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* — U.S. —, —, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

■ In reviewing the transcript, we do not agree with the district court that even if exclusion of the testimony was error, it was harmless. The district court gave several reasons for this conclusion, which reasons essentially stem from the district court's opinion that Stephens' version as told at trial is unbelievable. We do not agree that Stephens' account of the incident is necessarily impossible.

As with Stephens' version, Wilburn's account of the incident has certain key aspects which are questionable. For example, although Wilburn allegedly yelled several times while she attempted to ward off Stephens, her sister and brother-in-law did

---

8. We note that even if the procedural requirements were applicable to the testimony, it would not be proper to exclude it on a technicality without looking to the specific factual circumstances and consequences of exclusion. *See Michigan v. Lucas,* — U.S. —, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).

not awake until after Stephens had left. Also, while Wilburn was eventually able to push Stephens off her, Stephens initially was able to simultaneously hold her arms, cover her mouth, rip her shirt and bra, and unfasten his pants. Finally, Wilburn's failure to mention the incident to the police officer at the trailer may be skeptically viewed by some.

Stephens has the right to present his entire version of the incident to the jury. The jury should have been allowed to hear Stephens' unabridged account of the incident in order to properly balance the credibility and believability of both Stephens' and Wilburn's testimony. We conclude that the trial court's exclusion of Stephens' testimony had an "injurious effect" on the jury's finding that Stephens was guilty of attempted rape.

We therefore grant Stephens' petition for a writ of habeas corpus and remand this action to the district court for further proceedings consistent with this opinion.

Before BAUER, Chief Judge, CUMMINGS, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, ILANA D. ROVNER, Circuit Judges, REYNOLDS, Senior District Judge.*

### ORDER

June 9, 1993.

On consideration of the petition for rehearing and suggestion of rehearing *en banc* filed by respondents-appellees on April 9, 1993, and the answer of petitioner-appellant, a vote of the active members of the Court was requested and a majority of the judges in active service have voted to rehear this case *en banc.*

IT IS ORDERED that rehearing *en banc* be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the opinion entered in this case on March 26, 1993, as amended May 21, 1993, be, and is hereby, VACATED. This case will be reheard *en banc* at the convenience of the Court.

* The Honorable John W. Reynolds, Senior District Judge for the Eastern District of Wisconsin, sitting by designation, was a member of the