**Henry TAGUE, Petitioner–Appellant,**

v.

**Thomas RICHARDS and Attorney General of the State of Indiana, Respondents–Appellees.**

**No. 91–2411.**

United States Court of Appeals, Seventh Circuit.

Argued April 12, 1993.

Decided Aug. 31, 1993.

ent authority, if any, is not dispositive of West-    ern's conversion claim.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, IN, (Janet Cabarl and Daniel Myers, Law Students, argued), for petitioner-appellant.

Lisa McCoy, John T. Roy (argued), Office of Atty. Gen., Federal Litigation, Indianapolis, IN, for respondents-appellees.

Before BAUER, Chief Judge, CUDAHY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Henry Tague was convicted in an Indiana state court of child molesting and was sentenced to twelve years imprisonment. The Indiana Supreme Court affirmed his conviction, 539 N.E.2d 480 (1989), and he subsequently filed a petition under 28 U.S.C. § 2254 seeking habeas corpus relief, in the United States District Court for the Northern District of Indiana. The district court denied his petition. On appeal, Tague raises several issues, most important of which are whether the state trial court's application of Indiana's rape shield statute, Ind.Code § 35–37–4–4, violated his Sixth Amendment right to confrontation, and whether allowing amendment of the charging information shortly before trial deprived him of due process. We hold that the state trial court's application of Indiana's rape shield statute violated the federal constitution, but, in light of the other evidence introduced at trial, this violation was harmless. Furthermore, no constitutional violation resulted from the amendment of the information on the day of the trial. Thus, we affirm the district court's denial of Tague's habeas petition.

## I. Background

In October 1986, A.T., an eleven-year old girl, reported to her school counselor that she had been molested by her neighbor, Henry Tague. The school counselor notified the local welfare department, which ultimately led to the involvement of state law enforcement. On May 1, 1987, a criminal information was filed alleging Tague had "perform[ed] deviate sexual conduct with A.T., a child under twelve years of age," in violation of Ind.Code § 35–42–4–3(a). Tague pleaded not guilty and the case proceeded to trial. Just prior to the commencement of trial, over Tague's objection, the charging information was amended to also allege that he had sexual intercourse with A.T.

At trial, A.T. testified that Tague molested her on three separate occasions during the summer of 1986. A.T. lived across the street from Tague, who was her father's cousin and a friend of her family. A.T. spent considerable time at Tague's house. Early in the summer of 1986 Tague took her on a motorcycle ride to a house in the country. Upon entering the house, Tague fondled her breasts and vagina. Tague's requests for intercourse and oral sex were denied by A.T., and the two returned to his home.

A.T. further testified that in July or August of 1986, she went to Tague's home to request a package of cigarettes for her mother. Under the guise of retrieving cigarettes from the kitchen, he led her to his bedroom. While in his bedroom, Tague forced A.T. onto his bed, removed their clothes, and placed his penis between her legs. A.T. testified that she was uncertain if penetration actually took place. After the attack, Tague threatened A.T. that if she told anyone about the incident, he would take care of her with a rope that was in the room.

A.T. testified that the last incident occurred on either August 23 or August 24, 1986, when she went to Tague's home to see if a foster child (a friend of hers) was still living with Tague. On that day, an attack similar to the earlier one occurred, except this time in addition to placing his penis

between her legs, Tague forced her to perform oral sex.

A school counselor testified that on October 26, 1986, A.T. told her of the two incidents of molestation that occurred at Tague's home. A welfare department worker assigned to the case testified that A.T. recited virtually identical versions of the incidents to her. On the evening of October 26, A.T. told her mother of Tague's attacks, giving an account of the events substantially similar to those conveyed to the school counselor and the welfare department worker. The testimony of A.T.'s mother also verified that A.T. went over to Tague's home on August 24 and returned upset, apparently because the foster child was no longer staying with Tague.

The prosecution also presented the testimony of Dr. Roberta Ann Hibbard, who had interviewed and physically examined A.T. Her examination of A.T. revealed that "there was some extra tissue on her hymen" and that she was infected with gardnella vaginitis, a disease rarely found in children and generally thought to be sexually transmitted. Dr. Hibbard testified that A.T. told her that the main symptom of the disease, vaginal discharge, surfaced around the time of the attacks. Based on these facts, Dr. Hibbard concluded that A.T. "was most likely a victim of sexual abuse."

On cross-examination of Dr. Hibbard, Tague sought to elicit testimony regarding A.T.'s statements to Dr. Hibbard that she had been molested several years earlier by her father. Relying on Indiana's rape shield statute, the trial court refused to permit this testimony because it related to prior sexual acts involving A.T. Tague was limited to eliciting testimony from Dr. Hibbard that she could not verify whether the hymenal damage occurred within "three months or three years prior to the examination."

In addition to a flat denial of the charges, Tague presented an alibi defense. Several witnesses, many of whom were his relatives, testified that on the weekend of August 23 and 24, they spent time with him. The cumulative effect of this testimony was that at no time during that weekend was Tague alone at his home, and thus he could not have molested A.T. on those dates.

The jury returned a verdict of guilty. The Indiana Supreme Court affirmed the conviction on appeal. The federal district court denied Tague's habeas corpus petition, and this appeal followed.

## II. *The Sixth Amendment Right to Confrontation*

Ind.Code § 35–37–4–4 prohibits a criminal defendant from introducing in his defense against a sex crime charge, including child molesting, any evidence of the victim's past sexual conduct, with the exception of evidence:

(1) of the victim's or a witness's past sexual conduct with the defendant;

(2) which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded; or

(3) that the victim's pregnancy at the time of trial was not caused by the defendant.

Ind.Code § 35–37–4–4(a) and (b).

At trial, Dr. Hibbard testified that her physical examination of A.T. in January 1987 revealed that she had an enlarged hymen and a disease that is generally thought to be sexually transmitted. Based on these two facts, as well as statements A.T. made to her, Dr. Hibbard opined that A.T. had been sexually abused. On cross-examination by Tague's counsel, Dr. Hibbard explained that she could not determine if the hymenal damage occurred three months or three years before the examination and that, while the condition of A.T.'s hymen was consistent with sexual intercourse, other possible, but unlikely, causes of the damage existed. Finally, Dr. Hibbard agreed with the statement by Tague's counsel that while the enlarged hymen indicated penetration had occurred, this evidence in and of itself did not indicate Tague had intercourse with A.T.

Following this testimony, the trial court granted the request of Tague's counsel, Mark Greenwell, to elicit testimony of Dr. Hibbard, without the jury present, and the following exchange occurred:

Mr. Greenwell: ... Did you question A.T. if she claimed that she had been sexually

molested by any other male beside[s] Henry Tague?

Dr. Hibbard: Yes, I did.

Mr. Greenwell: And what did she tell you when you questioned her regarding that?

Dr. Hibbard: Uh, she told me that she had unwanted sexual relations with her father years ago.

Mr. Greenwell: Okay.

Dr. Hibbard: Several years [prior] to my having seen her.

Mr. Greenwell: And wouldn't that statement also be consistent with the physical evidence of the damage to her hymen?

Dr. Hibbard: That evidence could and certainly would be consistent with ... the physical damage to her hymen[,] would be consistent with her having a sexual experience years previously.

■ Relying on the Indiana rape shield statute, the trial court granted the state's request to exclude this evidence of prior sexual activity. On review, the Indiana Supreme Court agreed that the evidence regarding A.T.'s molestation by her father did not fall within any of the exceptions contained in Ind.Code § 35–37–4–4(b), an issue of state law which we cannot review. *Estelle v. McGuire*, —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991).

■ In his federal habeas petition, Tague challenges the constitutionality of § 35–37–4–4, arguing that its application denied him his Sixth Amendment right to confrontation. There is a substantial question of whether Tague presented his federal constitutional challenge to the state courts as required for its inclusion in a federal habeas petition. Tague never raised the constitutional issue in the state trial court. In addition, although our record does not contain the arguments presented on direct state court appeal, the opinion by the Indiana Supreme Court does not mention any federal constitutional challenge to Indiana's rape shield statute. Nevertheless, the state waived any procedural objection by not arguing that Tague failed to exhaust his state remedies related to this issue, *Fagan v. Washington*, 942 F.2d 1155, 1157 (7th Cir.1991), and thus we address the merits of Tague's federal constitutional challenge.

■ While the Indiana rape shield statute has been held facially constitutional, *Moore v. Duckworth*, 687 F.2d 1063, 1067 (7th Cir.1982), "the constitutionality of such a law as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Sandoval v. Acevedo*, 996 F.2d 145, 149 (7th Cir.1993). In this case, Tague argues that the application of the rape shield statute infringes on his Sixth Amendment right to confront witnesses, which includes the right to cross-examination. *See Davis v. Alaska*, 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). The right to cross-examination is not absolute. "[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). Furthermore, the right to confront witnesses "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973).

For example, the Supreme Court in *Michigan v. Lucas*, —— U.S. ——, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991), rejected a facial challenge to the constitutionality of a rape shield statute that required the defendant to file a written motion and offer of proof within ten days after his arraignment if he wished to present evidence of his past sexual conduct with the victim. Assuming that failure to comply with the statute resulted in exclusion of the evidence of prior sexual relations, the Court found this requirement "serves legitimate state interests in protecting against surprise, harassment, and undue delay," and thus, in some cases, its enforcement would not violate a defendant's Sixth Amendment rights. *Id.* at ——, 111 S.Ct. at 1748. The Court remanded the case to the Michigan Court of Appeals to determine whether preclusion in the defendant's case would violate his rights under the Sixth Amendment. *Id.* Hence, in the instant case, we examine both the effect of the precluded evidence on Ta-

gue's Sixth Amendment rights and the state's interests in excluding the evidence at issue.

In addressing the scope of the right to cross-examination, we have stressed the distinction between direct and collateral evidence.

> Collateral matters are subjects not raised during direct examination and normally relate to the general credibility of the witness. The trial court has great latitude to exclude collateral information because the witness' general credibility may normally be attacked with other information. The court has less discretion to exclude testimony on direct matters because of the substantial danger of prejudice to the defense if it is denied the opportunity to test the truth of direct testimony.

*United States ex rel. Ashford v. Director, Ill. Dept. of Corrections,* 871 F.2d 680, 683 (7th Cir.1989) (citations omitted).

Here, through the testimony of Dr. Hibbard, the state introduced direct evidence indicating that the condition of A.T.'s hymen was consistent with her having been sexually abused. In a child molesting case, the victim's youth and susceptibility to other influences may cause the jury to consider the possibility that the alleged incident is fabricated, and, even if the incident occurred, whether the child is accusing the right person. The state's introduction of evidence that A.T. had a enlarged hymen bolstered the credibility of A.T.'s allegations by eliminating the first potential fabrication from the jury's mind—A.T. had been molested. It would have been logical for the state to have reasoned that, given A.T.'s enhanced credibility, the jury would infer that the condition of her hymen was a result of the alleged attacks by Tague.

The Indiana trial court's application of that state's rape shield law to exclude evidence indicating that another possible source of the hymenal damage existed significantly hampered Tague's efforts to rebut the inferences the state asked the jury to draw from the direct testimony of Dr. Hibbard. *Compare United States v. Begay,* 937 F.2d 515 (10th Cir.1991) (when prosecution specifically relied on enlarged hymen as evidence of moles-

tation, Confrontation Clause required admission of evidence of another source of that condition); *United States v. Bear Stops,* 997 F.2d 451 (8th Cir.1993) (when state introduced bloody garment as evidence of alleged molestation, Confrontation Clause required admission of cross-examination testimony regarding another sexual assault that provided an alternative explanation of that evidence) *with Jones v. Goodwin,* 982 F.2d 464 (11th Cir.1993) (no right to introduce evidence of victim's prior sexual conduct when state did not introduce evidence of her virginity).

The right to cross-examine, as well as other forms of confrontation, "ensure that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing that is the norm of Anglo–American criminal proceedings." *Maryland v. Craig,* 497 U.S. 836, 846, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666 (1990). The application of the Indiana rape shield statute in this case denied Tague that Sixth Amendment right.

The state argues that no constitutional infringement occurred because A.T.'s statements to Dr. Hibbard indicating she had been molested by her father were irrelevant to the issue of whether Tague committed the alleged acts. Additionally, the state contends that the defendant was able to effectively challenge the value of this evidence by eliciting testimony from Dr. Hibbard indicating that she could not state when or who caused the hymenal condition.

We agree with the state that, as a general matter, A.T.'s virginity, or lack thereof, had no relevance in Tague's prosecution. However, when the state introduced the hymenal evidence that physical condition became an issue. In the absence of any testimony of prior sexual experience, the jury would likely presume that hymenal damage to an eleven-year-old girl was the result of the alleged molestation. As a result, the cross-examination of Dr. Hibbard which disclosed that she could not state who caused the condition was of only limited value to Tague.

The state's decision to introduce such evidence on direct examination recognizes this perception. Surely, in a prosecution for the rape of a thirty-five-year-old married women,

with whom the defendant denied ever having intercourse, the state would not introduce physical evidence indicating that the victim was not a virgin to show the alleged act occurred. The upshot is that because of A.T.'s age, the state introduced such evidence with the hope that the jury would infer Tague caused the hymenal condition—evidence which he was entitled to rebut by raising the inference of another possible source of the physical condition.

Furthermore, the state does not have a substantial interest in excluding such evidence in this type of case. In general, by prohibiting evidence of the victim's sexual history, rape shield statutes "exclude evidence that even if relevant has little probative value but great capacity to embarrass and distract, evidence that is considered to shift the balance of proof far too far in favor of the rape defendant." *Sandoval*, 996 F.2d at 148–49. "The [Indiana rape shield] statute was enacted to prevent a general inquiry into the past sexual conduct of the victim in order to avoid 'embarrassing the victim and subjecting her to possible public denigration.'" *Kelly v. State*, 586 N.E.2d 927, 929 (Ind.App.1992) (quoting *Thomas v. State*, 471 N.E.2d 681, 683 (Ind.1984)).

While necessarily conceding that the excluded evidence does not create a risk of public embarrassment to the same degree as evidence of prior consensual sex, the state argues that the rape shield statute's application prevents the defense from creating a side-show based on the issue of whether A.T. was molested by her father. At a minimum, the state argues, the exclusion of the evidence serves the state's valid interest in preventing the victim from reliving the molestation by her father.

The state exaggerates the content of the testimony Tague sought to introduce. Contrary to the state's claim, Tague did not seek to conduct a "fishing expedition" into A.T.'s sexual history, but rather he attempted to elicit the statements that she made to Dr. Hibbard in order to rebut the inference the state created through the introduction of the physical condition of the victim's hymen. The cross-examination was limited to that precise purpose, eliciting testimony that A.T.

indicated she had been molested by her father and that this incident of molestation was consistent with A.T.'s physical condition. The degree to which A.T. would have been forced to relive this offensive conduct was ameliorated by the fact that she was not the witness being questioned regarding the incident. Moreover, there was no indication Tague's counsel sought to pry into the details of the incident.

We recognize the potential embarrassment to A.T. resulting from the public knowledge that she had been molested by her father. We also acknowledge that elimination of the risk of embarrassment furthers the state's interest in encouraging children to report cases of molestation so that the perpetrators can be prosecuted. Nonetheless, in this case, those state interests, laudable as they may be, do not outweigh Tague's constitutional right to challenge, through cross-examination, the value of the direct testimony of Dr. Hibbard presented by the state. Consequently, we hold that the trial court's exclusion of the evidence that A.T. had been molested by her father violated Tague's Sixth Amendment right to effective cross-examination.

■ Having found a violation of Tague's constitutional rights, we turn to the state's contention that this error was harmless. Both parties assert that the state must show that the error was "harmless beyond a reasonable doubt," the standard announced by the Supreme Court in *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986), the Supreme Court applied the *Chapman* standard to a Confrontation Clause violation on direct review of the Delaware Supreme Court's affirmance of a criminal conviction. Relying on *Van Arsdall*, we previously have applied the *Chapman* harmless-beyond-a-reasonable-doubt standard to determine whether a Confrontation Clause error requires a grant of habeas relief. *Ashford*, 871 F.2d at 688. But that standard is no longer applicable.

Following oral argument in this case, the Supreme Court held that, in habeas proceedings, the *Chapman* standard does not deter-

mine whether a constitutional error was harmless. *Brecht v. Abrahamson,* —— U.S. ——, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Rather, in such situations, federal courts shall apply the less onerous standard announced in *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)—an error is harmless unless the party seeking relief can show the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht,* —— U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. at 1253). The Court reasoned that a less rigorous standard of review is warranted as "[f]ederal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Brecht,* —— U.S. at ——, 113 S.Ct. at 1720 (quoting *Engle v. Issac,* 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982)). Moreover, both the state's interest in finality and the social costs of retrying defendants years after the original conviction outweigh the *Chapman* standard's marginal benefit of deterring state courts from not fully enforcing constitutional rights. *Id.,* —— U.S. at ——, 113 S.Ct. at 1721.

While *Brecht* involved a different issue—whether the state's use of the petitioner's post-*Miranda* silence for impeachment purposes mandated a grant of habeas relief—the federalism and comity interests that warranted a lesser standard of review in that case apply fully to a trial error involving the Confrontation Clause. *See, e.g., Stoner v. Sowders,* 997 F.2d 209, 212 (6th Cir.1993) (*Brecht* standard of harmless error applies to unconstitutionally admitted videotaped depositions); *Pemberton v. Collins,* 991 F.2d 1218, 1226 (5th Cir.1993) (*Brecht* standard of harmless error applies to unconstitutionally admitted hearsay). Thus, our holding in *Ashford* applying the *Chapman* standard of harmless error to a Confrontation Clause error in a habeas proceeding has been overruled, and we examine the impact of the error on Tague's trial under the *Kotteakos* standard as adopted by *Brecht.*

■ Under this standard, Tague is "not entitled to habeas relief based on trial error unless [he] can establish that it resulted in 'actual prejudice.'" *Brecht,* —— U.S. at ——, 113 S.Ct. at 1722. Tague fails to meet this standard. While the excluded cross-examination would have established another possible source of the condition of A.T.'s hymen, we do not believe, in light of the other evidence, that it had an "injurious effect or influence" on his trial. The victim testified with great detail that on three separate instances Tague sexually attacked her. A.T.'s mother, her school counselor, and the welfare department case worker all testified that A.T. recited substantially similar versions of the incidents to them, reinforcing A.T.'s credibility. In addition, her allegations were supported by her mother's testimony that placed her at Tague's home on August 23 or 24, the weekend of one of the alleged incidents.

More importantly, A.T.'s infection with gardnella vaginitis directly supported her allegations that Tague had molested her in the summer of 1986. Dr. Hibbard testified that A.T. told her that she began to experience vaginal discharge, a symptom of the disease, several months before the January 1987 examination. Dr. Hibbard further opined that the timing of the appearance of these symptoms was consistent with her being molested in August 1986. While the introduction of evidence that A.T. had been molested by her father several years earlier would diminish the value of the evidence of hymenal damage, it would not explain the vaginal discharge which began to appear shortly after the alleged assaults. Hence, even if the excluded testimony had been admitted, Tague still could not call into question the primary physical evidence that corroborated A.T.'s allegations. Because Tague has failed to demonstrate that the exclusion of testimony indicating that A.T. had been molested by her father substantially prejudiced the result of his trial, we find the infringement on his Sixth Amendment rights harmless.

### III.   *The Amendment of the Information*

■ On May 1, 1987, a charging information was filed in Parke County, Indiana, alleging that during the months of July and August 1986, "Henry Tague, being at least sixteen years of age, did perform deviate

sexual conduct with [A.T.], a child under twelve years of age." On September 9, 1987, the day of trial, the court granted, over the defendant's objection, the prosecution's motion to amend the information by inserting the words "and/or sexual intercourse" between the words "deviate sexual conduct" and "with." Consistent with this amendment, at the close of evidence the court instructed the jury that a guilty verdict could be based on a finding that Tague engaged in either sexual deviate conduct or sexual intercourse with A.T.

Tague acknowledges that the sufficiency of a charging information generally is not a proper subject for habeas review, *Knewel v. Egan*, 268 U.S. 442, 446, 45 S.Ct. 522, 524, 69 L.Ed. 1036 (1925), but contends that this amendment on the eve of trial deprived him of adequate notice of the charges against him as required by the Sixth and Fourteenth Amendments. In *Bae v. Peters*, we acknowledged:

> No matter how a state chooses to charge a criminal defendant, the due process clause requires that a criminal defendant receive "notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge." In other words, a criminal defendant must receive adequate notice of the charges against him so that he may defend himself against those charges.... *[A] last-minute change in the charge could prejudice a defendant's opportunity to defend himself; if that prejudice is severe enough, a due process violation could occur.*

950 F.2d 469, 478 (7th Cir.1991) (emphasis added). Resolution of the issue turns on whether Tague was "adequately apprised of what he had to meet" and had "sufficient time to prepare." *Denton v. Duckworth*, 873 F.2d 144, 149 (7th Cir.), *cert. denied*, 493 U.S. 941, 110 S.Ct. 341, 107 L.Ed.2d 330 (1989).

While the commission of either sexual intercourse or sexual deviate conduct with a child under twelve would violate the statute under which he was charged, Ind.Code § 35–42–4–3(a), Tague argues that the last minute amendment of the information to include allegations of sexual intercourse deprived him of due process by expanding the number of dates on which he was alleged to have committed the crime.

Tague asserts that he was prepared to present an alibi defense for August 23 and 24 because A.T. alleged that sexual deviate conduct, the act of fellatio, occurred on one of those dates. According to Tague, when the information was amended to add the charge of sexual intercourse, an act requiring the proof of different elements, *Dixon v. State*, 425 N.E.2d 673, 678 n. 5 (Ind.App.1981), he was forced to defend against A.T.'s allegations that sexual intercourse occurred not only on August 23 or 24, but also on another unspecified date in July. Tague argues that this prejudiced his defense because the jury's acceptance of his alibi defense for the August dates would no longer result in his acquittal; the jury could have based a conviction on the alleged July incident, a charge for which he lacked time to adequately prepare a defense.

We hold that the amendment of the charging information did not rise to the level of a federal constitutional violation. An affidavit from the investigating officer attached to the original information alerted Tague right from the start that A.T. alleged he attempted to have intercourse with her. The specifics of these allegations, including that intercourse may have occurred, were conveyed to Tague through A.T.'s deposition, taken well before the trial. As a result, we reject his claim that he was not aware of the need to defend against the prosecution's theory based on both intercourse and deviate conduct.

Moreover, Tague fails to demonstrate how his defense would have differed had the information been amended earlier. As he concedes, Tague could not have presented an alibi defense for the entire month of July, in addition to the August dates, to remove any possibility that the acts occurred. Regardless of the amendment, in addition to his outright denial, Tague's best defense was trying to prove he had no opportunity to molest A.T. on August 23 or 24, leading the jury to conclude that those allegations were fabricated, and, in turn, to question the validity of the other alleged incidents of molestation. As Tague was able to fully present this defense, we cannot conclude that the amendment to the information "so infected the trial

**1142**

with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

The district court's denial of Tague's petition for a writ of habeas corpus is AFFIRMED.

CUDAHY, Circuit Judge, concurring.

I agree with the majority that the exclusion of the testimony suggesting prior hymenal damage in this case violated the petitioner's Sixth Amendment right to cross-examine witnesses effectively but that this constitutional error was nonetheless harmless. I write separately, however, in order to emphasize my belief that, but for the evidence of A.T.'s venereal disease, the petitioner would clearly have satisfied his burden of showing that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* — U.S. ——, ——, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). As the majority opinion correctly finds, "[i]n the absence of any testimony of prior sexual experience, the jury would likely presume that hymenal damage to an eleven-year-old girl was the result of the alleged molestation." *Ante* at 1138. Thus, the other evidence on which the majority relies in concluding that the error was harmless—the detailed testimony of the victim, the consistency with which the victim related her stories to others and A.T.'s mother's testimony placing A.T. at Tague's home on the weekend of one of the alleged incidents—would alone not be enough to overcome the error's prejudicial influence on the jury. Dr. Hibbard's testimony regarding A.T.'s venereal disease, however, establishes that, even if the cross-examination had not been unconstitutionally circumscribed, the jury would still have been able to corroborate the victim's allegations with physical evidence. Because of this evidence, and this evidence alone, I concur that the constitutional error was harmless.