**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Nov 12 2014, 9:57 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JACOB D. WINKLER**
**KATHERINE J. NOEL**
Noel Law
Kokomo, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES T. BAGBY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 34A04-1309-PC-453 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HOWARD CIRCUIT COURT
The Honorable Brant J. Parry, Special Judge
Cause No. 34C01-1106-PC-99

**November 12, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

STATEMENT OF THE CASE

Appellant-Defendant, James T. Bagby (Bagby), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

ISSUES

Bagby raises three issues on appeal, which we consolidate and restate as the following two issues:

(1) Whether Bagby is entitled to a new trial based upon newly discovered evidence; and

(2) Whether Bagby received ineffective assistance of trial counsel.

FACTS AND PROCEDURAL HISTORY

We adopt this court's statement of facts as set forth in our memorandum opinion issued in Bagby's direct appeal, *Bagby v. State*, No. 34A02-1002-CR-158 (Ind. Ct. App. Feb. 18, 2011), *trans. denied*:

> Bagby, who is over the age of eighteen, has a stepdaughter, A.R., who was fifteen years old during the relevant period of time. Between November and December 2008, Bagby went into A.R.'s bedroom around 5:30 a.m. and had sexual intercourse with her on at least two occasions. He threatened A.R. not to tell anyone. On January 2, 2009, A.R. reported the incident to a family member, and the police were contacted. In the course of the investigation, A.R.'s bed sheets were seized, and laboratory results later revealed that Bagby's sperm was on the sheets.
>
> On January 6, 2009, Bagby was charged with [C]lass D felony criminal confinement, on January 14, 2009, the State added two counts of [C]lass B felony sexual misconduct with a minor, and on January 23, 2009, the State added a fourth count alleging [C]lass D felony sexual battery. Bagby's jury trial took place on September 22 and 23, 2009. At the close

of the first day of trial, Bagby sought to introduce a statement purportedly made by A.R. to the father of a former sexual partner that the partner was her "one and only." Tr. p. 115. Bagby sought to present this statement through the testimony of A.R.'s mother, who claimed to have overheard the conversation. The trial court denied admission of the evidence based on the Rape Shield Rule.

At the conclusion of the State's evidence, the State dismissed the criminal confinement charge. The jury found Bagby not guilty of sexual battery and guilty of two counts of sexual misconduct with a minor. Following the December 16, 2009, sentencing hearing, the trial court imposed fifteen-year sentences on each of the two convictions, to run consecutively.

See *id*. at 1. On direct appeal, Bagby raised issues related to the admission of A.R.'s testimony regarding her prior sexual partners, prosecutorial misconduct, and his sentence. On February 18, 2011, we affirmed Bagby's conviction. *Id*.

On May 20, 2011, Bagby filed a *pro se* petition for post-conviction relief. Bagby amended his petition on February 23, 2012 and subsequently on February 15, 2013. In his petition, Bagby asserted claims of newly discovered evidence and ineffective assistance of trial counsel. An evidentiary hearing for Bagby's second amended post-conviction relief petition was held on February 20, 2013. Thereafter, both parties filed their proposed findings of fact and conclusion of law. On May 27, 2013, the post-conviction court denied Bagby's petition for relief. On July 29, 2013, Bagby filed a motion to correct error and the State filed its response on August 13, 2013. On August 16, 2013, the trial court denied Bagby's motion.

Bagby now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

3

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

## II. *Newly Discovered Evidence*

The Indiana Supreme Court has enunciated nine criteria for relief based on admission of newly discovered evidence.

> [N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000) (citing *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind. 1991)). "This Court analyzes these nine factors with care, as 'the basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized.'" *Id*. (quoting *Reed v. State*, 508 N.E.2d 4, 6 (Ind. 1987)). The burden of showing that all nine requirements are met rests with the petitioner for post-conviction relief. *Webster v. State*, 699 N.E.2d 266, 269 (Ind. 1998).

4

"In ruling whether a piece of evidence would produce a different result, the [post-conviction court] may properly consider the weight that a reasonable trier of fact would give it and, while so doing, may also evaluate its probable impact on a new trial in light of all the facts and circumstances shown at the original trial of the case." *Fox v. State*, 568 N.E.2d 1006, 1007 (Ind. 1997). "The defendant must raise a strong presumption that the result at any subsequent trial in all probability would be different." *Bunch v. State*, 964 N.E.2d 274, 296 (Ind. Ct. App. 2012), *reh'g denied, trans. denied*. "A sufficient probability of a different result upon retrial is present where the omitted evidence creates a reasonable doubt that did not otherwise exist." *Fox*, 568 N.E.2d at 1008.

Bagby argues that the post-conviction court erred by denying his request for a new trial based on newly discovered evidence. Bagby first argues that the discovery of A.R.'s sexual history with other men was discovered after trial; therefore, the evidence was material in showing that other persons may have committed the sexual acts. Secondly, Bagby argues that the post-conviction court erred in refusing to admit the affidavits of A.R.'s mother, Kim Bagby (Kim) which presented newly discovered evidence. We will discuss each issue in turn.

## A. *A.R.'s Prior Sexual History*

The post-conviction court denied Bagby's claim primarily on the basis that A.R.'s sexual history, though newly discovered evidence, would not have produced a different result. In reaching to that conclusion, the post-conviction court stated the following:

> The evidence of [A.R.'s] prior sexual activity with Taylor Yard, and her history of abuse at the hands of several men was discovered after the trial. The evidence is material and relevant, not cumulative, not merely

impeaching, and not privileged or incompetent. Due diligence was used by the police and [trial counsel] prior to trial yet the evidence was not discovered. The evidence is worthy of credit and can be reproduced upon a retrial of this case. However, the [c]ourt finds that this evidence is not likely to produce a different result at trial. [] Yard testified that he had sex with [A.R.] in December 2008. The allegations against [Bagby's] [] conduct is from November and December 2008. It is unclear whether [] Yard and [] [A.R.] were together before or after Bagby committed these crimes. Further, it is unlikely that the jury would come to different result [] that the tear to [A.R.'s] hymen may not have been as a result of Bagby's conduct. Dr. Haendiges testified in the original trial that she could not tell the age of the tear. She testified on cross examination that the tear could have occurred as a result of an accident. She could not testify that the tear was a result of Bagby's conduct. Even with this evidence, the jury would still have the testimony of [A.R.] regarding what happened to her, the testimony of [Kim], [] the physical evidence (bed sheets), and the testimony of the Indiana State Police experts.

(Conclusion #21).[1]

In light of the post-conviction court's detailed analysis of A.R.'s sexual history, we agree with its conclusion that Bagby failed to carry his burden of proof and no new trial is mandated. Assuming A.R.'s sexual history is presented on Bagby's retrial, we fail to see how the results would be different since there is sufficient evidence to prove Bagby committed the two acts of sexual misconduct. Shortly after the incident, A.R. reported the incident to Kim. Kim testified at Bagby's trial that A.R. had reported to her that Bagby had touched "her down there" and that Bagby would go into her "room at 5:30 a.m. every morning." (Trial Tr. p. 94).[2] In addition, A.R. wrote private letters recounting her molestations, and in one of those letters, she stated that Bagby had sexually molested her.

---

[1]. Bagby included the trial court's findings and conclusions of law at the end of his brief. Instead of citing his brief, we will reference the particular Finding or Conclusion of Law by number.

[2] Throughout this opinion, the transcript of Bagby's trial will be cited as "Trial Tr."and the transcript of the post-conviction hearing will be cited as "P-C Tr."

A.R. intended to give the letters to her friend's mother, Laura Groover (Groover) instead; she retained them. Kim later found the letters hidden under A.R.'s bed, read some of them, and then placed them on top of the coffee table. Kim testified that Bagby later found the letters and burnt them on the grill on the night he was arrested.

Bagby's claim that he previously had sex with Kim on A.R.'s bed, thus explaining why his DNA specimen was on A.R.'s bed sheets, we find no merit. At trial, Kim clarified that she and Bagby had sex on A.R.'s bed on at least on two occasions in the summer of 2008, and that the sheets had since been washed. There was no evidence on record showing that the DNA on A.R.'s bed sheet belonging to men other than Bagby's. The value of this DNA evidence was great as it provided a clear link to the State's claim that Bagby molested A.R. In addition, the presence of Bagby's DNA on A.R.'s bed bolstered A.R.'s testimony that Bagby abused her in November and in December 2008.

Based on the foregoing, we find that the ninth prong in *Carter* for newly discovered evidence was not met. Though A.R.'s sexual history was discovered after trial, that evidence, even if presented on retrial, would not produce a different result. Although it is true that there were some factual discrepancies at the evidentiary hearing as to when other men molested her, A.R.'s account of Bagby molesting her in November and December 2008 did not change. A.R. identified her abuser, and her testimony of the acts of molestation were specific as to who molested her in the winter of 2008. In this regard, we find that Bagby has not shown that A.R.'s sexual history met the nine criteria expressed in *Carter*.

## B. *Kim's Affidavits*

7

Bagby argues that the post-conviction court erred in refusing to admit the affidavits attached to his petition. At the close of the evidence, Bagby sought to have the two affidavits sworn to by Kim on May 28, 2011, admitted into evidence. In one of the affidavits, Kim stated that on the day before trial, the prosecutor called her and she informed the prosecutor that she and Bagby had sex on A.R.'s bed, and that A.R. had confessed to her that Justin Richard was her one and only. In the second affidavit, Kim stated that on the morning of Bagby's trial, the prosecutor requested her not to disclose to Bagby's attorney that she and Bagby had sex on A.R.'s bed. The State moved to strike the admission of the affidavits based upon the fact that the statements were hearsay and the affiant could not testify. Ultimately, the post-conviction court sustained the State's objection to the admission of the affidavits.

Indeed, not affording the State an opportunity to cross-examine Kim, whose testimony Bagby sought to present by way of affidavit, prompted the post-conviction court to sustain the State's objection in the first place. *See Shumaker v. State*, 523 N.E.2d 1381, 1382 (Ind. 1988) (noting that the proffered affidavit was hearsay and improperly admitted because it was an out-of-court statement offered to prove the truth of the matters asserted therein and not susceptible to cross-examination).

In as much as Bagby now claims that the affidavits presented new evidence, some of that evidence was discussed during trial and, therefore, was not new. Kim testified at trial that she and Bagby shared two nights on A.R.'s bed in the summer of 2008, and that the sheets were washed before A.R. was molested in November and December of 2008. Consequently, Kim's claim of having slept with Bagby in A.R.'s bed was neither new nor

relevant. Kim's allegation that A.R. had confessed to her that Justin Richard was her one and only sexual partner was presented in Bagby's direct appeal. Pursuant to Indiana Evidence Rule 412, this court refused to admit the last allegation for the simple reason that the evidence related to A.R.'s past sexual history. Thus, it was not new evidence. The only other evidence that was new and not discussed at trial was Bagby's accusation that the prosecutor ineffectually asked Kim not to divulge to the defense that she had slept with Bagby in A.R.'s bed. Even supposing Bagby's claim to be true, Kim disregarded any such command of keeping the information to herself, since she disclosed her sexual doings on A.R.'s bed during trial.

We also reject Bagby's claim that because the State had the affidavits from May 2011, and had refused to counter the affidavits, the post-conviction court should have accepted the contents of the affidavits as true. Bagby relies on *Scharbrough v. State*, 232 N.E.2d 592, 597 (Ind. 1968); and *Finger v. State,* 293 N.E.2d 25, (Ind. 1973). In *Scharbrough*, Scharbrough pled guilty to manslaughter pursuant to a plea agreement. *Scharbrough,* 232 N.E.2d at 596. In exchange, the State was to communicate to the court on the murder charge dismissal, which it failed to do, and Scharbrough was convicted of murder. *Id.* As a result, Scharbrough filed a motion for new trial supported by an affidavit, but then the State failed to file counter-affidavits. *Id.* In its holding, our supreme court stated

> This court is at a loss to understand why no counter-affidavit was filed as to what is set out in the supporting affidavit to the motion for a new trial, if it was not the truth. We are bound under our rules to accept the affidavit as the truth, since it is uncontradicted.

9

*Id.*  In *Finger*, the defendant filed a motion to correct error and supported it with an affidavit arguing ineffective assistance of counsel.  *Finger*, 293 N.E.2d at 26.  In affirming the trial court's decision, the supreme court stated,

> The State filed no counter-affidavit in response to the defendant's affidavit, and it is [d]efendant's contention that the court was therefore bound to accept his affidavit as true, citing *Scharbrough*[].  We did not in that case, however, indicate, as is reflected by the head note, that we were bound, in all circumstances, to accept the truth of affidavits filed in support of such motions but only that we were so bound in that case.  Counsel for [d]efendant, we are sure, will acknowledge certain distinguishing features between the *Scharbrough* case and the one at bar.  In the *Scharbrough* case, the allegations of the affidavit were factual, they concerned matters that were within the knowledge of the State and therefore susceptible to contradiction, if not true.  The allegations of [] the defendant's affidavit herein are largely conclusive and opinionative.  They relate not to matters of which the State could have any knowledge but rather to matters concerning which it could have no knowledge; and, conveniently, the only person who could counter, *i.e.* the lawyer whose effectiveness is being challenged, is dead.  Although defense counsel presented no witness other than the defendant, there is nothing, other than the defendant's affidavit, that suggests that [d]efendant was inadequately represented; and opinions and conclusions, although in affidavit form, have no weight as evidence.  This is particularly true under the circumstances of this case.

*Id.*  (internal citations omitted).  In both *Scharbrough* and *Finger*, the supreme court followed Rule 1-15 which was limited to motions supported by affidavits.[3]  As in *Finger*, here, the State did not counter the affidavits related to matters which the State did not have knowledge.  Additionally, the declarant of the affidavits, Kim, was unavailable to testify at Bagby's evidentiary hearing.  In addition, as noted above, P-C.R. 1(5) gives the trial court discretion to allow, but it doesn't compel it to accept affidavits.  Based on that, we

---

[3] Supreme Court Rule 1-15 referenced in *Scharbrough* appears to have been replaced or incorporated into Indiana Trial Rule 59(H).  *See* Marcia L. Gienapp, *Indiana's Trial Rule 59:  P-M Gas & Wash Co. v. Smith*, 13 Val U.L. Rev. 199, 212 (1979).

conclude that the post-conviction court did not abuse its discretion by refusing to admit Kim's affidavits.

## II. *Ineffective Assistance of Trial Counsel*

According to Bagby, his trial counsel provided ineffective assistance. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694 *reh'g denied*), *trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Id*. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake, v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697) *reh'g denied, cert. denied*, 537 U.S. 839 (2002).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Id*. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation

11

ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

Here, Bagby makes five claims that his trial counsel was ineffective, which we restate as: Whether his trial counsel failed to (1) investigate; (2) adequately cross-examine State's witnesses; (3) adequately defend against the DNA evidence; (4) confer with him prior trial; and (5) know the exceptions of the Rape Shield Law. We will address each of these issues in turn.

### 1. *Failure to Investigate*

It is undisputed that effective representation requires adequate pretrial investigation and preparation. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. However, it is well-settled that we should resist judging an attorney's performance with the benefit of hindsight. *Id*. As such, "[w]hen deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments." *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002).

Bagby makes several arguments regarding trial counsel's investigation of his case. First, Bagby argues that his trial counsel did not interview any of the fifteen witnesses he provided. We recognize that under certain circumstances, failure to call a useful witness can constitute deficient performance. *See Brown v. State*, 691 N.E.2d 438, 447 (Ind. 1998). However, both the Indiana supreme court and this court have previously held that "a 'decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess.'" *Johnson*, 832 N.E.2d at 1003 (quoting *Brown*, 691 N.E.2d

12

at 447). Bagby claims that his own list of witnesses had information regarding A.R.'s prior sexual history, and their testimony would have impeached A.R.'s testimony. During the post-conviction hearing, Bagby's trial counsel testified that when he reviewed the list of names that Bagby had supplied, he determined that each person on the list could only testify as to A.R.'s prior sexual history and their testimony would be inadmissible in light of the Rape Shield Statute. Also, trial counsel stated that the bulk of their testimony would have been "either he told me or she told me []." (P-C Tr. 118). We conclude that Bagby's claim fails.

Bagby also argues that trial counsel's failed to recall or investigate Groover as a potential witness was inexcusable. Specifically, Bagby contends that trial counsel "failure to have notes, information or strategy regarding [Groover] . . . in his defense[,] fell far below any reasonable attorney's behavior. In fact, his [] lack of recall regarding this witness exhibits his lackadaisical attitude toward the defense of his case." (Appellant's Br. pp. 20-21).[4] We disagree.

As stated in the foregoing, Groover was the mother to A.R.'s friend. According to the parties' brief, in a videotaped statement admitted as P-C Exh. 14—which was not enclosed in our review—A.R. stated that she showed Groover the private letters recounting the acts of molestation which took place in November and December of 2008; and that Groover read the letters and gave them back to her. Contrary, A.R. testified at Bagby's trial that she intended to give the letters to Groover, instead she retained them. Further, the

---

[4] Bagby also argues that trial counsel failed to cross-examine A.R. regarding the letters she wrote to Groover. Again, Bagby references P-C Exh. 14, a video recording where A.R. stated that she handed the private letters to Groover. Though marked in the P-C Exhibit table of content, the disk was not enclosed for our review.

13

record reveals that Kim later found the letters hidden under A.R.'s bed. As for trial counsel's failure to recall Groover as a *potential witness*, trial counsel testified that Groover's testimony—whether she had seen the private letters—had been presented at trial, it would have been damaging to Bagby's case because it would have only supported A.R.'s claim that Bagby molested her. Based on the foregoing, we concluded that trial counsel tactic of not exploring Groover as a potential witness was not deficient.

Lastly, Bagby argues that trial counsel failed to elicit testimony from Kim that she had sex with Bagby on A.R.'s bed. Due to that fact, Bagby contends that the State took advantage of that information in its closing argument by stating that "they slept in the bed a couple of times . . . but what [is] missing from that is she didn't have sexual intercourse with her husband, [] in that bed, never said she did, [] no evidence of that, just simply they slept there." (Trial Tr. p. 214). In this regard, Bagby argues that he was "prejudiced because having [Kim's] testimony that he had sexual relations in A.R.'s bed" would have explained why his semen was on A.R.'s sheets and would have "assisted in mitigating the damaging effect of the DNA evidence later entered at trial." (Appellant's Br. p. 21). It is well established that final summation is not evidence but an opportunity to advance one's theory of the case. Moreover, the jury was admonished that closing arguments were not evidence and that the State bore the burden of proving Bagby committed the sexual acts. *See Gamble v. State*, 831 N.E.2d 178, 184-85 (Ind. Ct. App. 2005) (holding that jury instructions served to lessen any persuasive effect that the alleged improper argument may have had), *trans. denied*.

14

Based on the foregoing, we find trial counsel's lack of enthusiasm in spending his trial preparation tracking down witnesses whose evidence would have been inadmissible, secondhand, or detrimental to Bagby's case was not defective, but purely strategic.

## 2. *Failure to Cross-Examine State Witnesses*

Bagby further complains that his trial counsel failed to adequately cross-examine A.R. and Dr. Michelle Haendiges (Dr. Haendiges), the gynecologist who examined A.R. for signs of trauma.

## A. *A.R.'s Testimony*

"It is well settled that the nature and extent of cross-examination is a matter of strategy delegated to trial counsel." *Waldon v. State*, 684 N.E.2d 206, 208 (Ind. Ct. App. 1997), *trans. denied*. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App. 2006), *trans. denied*. When considering whether counsel's performance was deficient, "the question is not whether the attorney could—or even should—have done something more"; rather "the inquiry must focus on what the attorney actually did[.]" *Reed,* 866 N.E.2d at 769.

Bagby takes great exception to trial counsel's election not to impeach A.R.'s testimony as to whether she showed the letters to Groover. Contrary to his assertion, A.R. testified during Bagby's trial that she did not give the letters to Groover as intended; rather, she hid them under her bed and the letters were later discovered by Kim. In addition, as stated in the preceding paragraphs, trial counsel testified that he could not recall Groover, thus explaining his reasons for not questioning A.R. on whether she revealed the letters to

15

Groover.  Lastly, at the time of the trial and under the circumstances, counsel acknowledged that Groover's testimony would be against Bagby's interest.  In this regard, we find that Bagby has not overcome the presumption that counsel performed effectively.

Bagby also argues that failure to cross-examine A.R. regarding her inconsistent statements she made in a videotaped recording entered as P-C Exh. 14 constituted deficient performance.  According to the parties' briefs, some of the inconsistent statements related to what clothes A.R. was dressed in when Bagby molested her, and who was in the room when she was being molested.  Since the exhibit is not enclosed for our review, we give great deference to the post-conviction court's conclusion stating in part that

> There is no question, [A.R.] made some inconsistent statements in this matter. [A.R.] waivered [sic] on the clothing she was wearing, who was present in the home at the time of the abuse, whether her sister was in the room at the time the abuse occurred.  However, the victim never waivered [sic] in her statement that the abuse did occur and that [Bagby] was the perpetrator.  Even though [trial counsel's] performance may have been deficient in his cross examination of the victim, the [c]ourt finds no reasonable probability that the result of the trial would have been different.  Bagby's claim fails.

(Conclusion #11).

## B. *Dr. Haendiges' Testimony*

Next, Bagby contends that trial counsel failed to cross-examine Dr. Haendiges.  Dr. Haendiges testified at Bagby's deposition that she found that A.R. had a "well-healed three millimeter scar or prior tear to the hymenal [sic] ring" that was not current.  (Trial Tr. p. 185).  Based on that evidence, Bagby argues that trial counsel failed to cross-examine Dr. Haendiges as to the healing period for a hymeneal scar.

Aside from his allegations, we are not convinced that the outcome of the trial would have been any different had trial counsel cross-examined the doctor.  The record reveals

16

that neither the State nor the defense questioned the doctor on the healing rate of a hymeneal tear. Additionally, Bagby did not present evidence at his evidentiary hearing on the healing period of a hymen. Although trial counsel did not cross-examine the doctor about the healing time, he did develop evidence that sexual intercourse was not the only vehicle to cause the hymeneal tear. During his cross-examination, Dr. Haendiges testified that the hymeneal tear could also have been caused by a "bicycle" injury or if A.R. had fallen onto a structure. (Trial Tr. p. 191). Accordingly, Bagby has not established that he suffered any prejudice from trial counsel's failure to raise the question with Dr. Haendiges.

### 3. *Failure to Challenge DNA Evidence*

Bagby argues that trial counsel did not challenge the statistical probability of the DNA evidence. At trial, trial counsel cross-examined the DNA Analyst as to whether someone other than Bagby contributed to the DNA. The DNA Analyst testified that with a degree of scientific certainty, Bagby's sperm fractions were found in items 2A1, 2A2, 2A3, 2A5, and 2A8.

At Bagby's evidentiary hearing, the DNA Analyst testified that "I have a DNA profile from a non-sperm fraction of a cutting of a sheet, which is item 2A8 that matches the DNA profile of [A.R.]. The DNA result obtained from the non-sperm fraction of the cutting of the sheet, item 2A3, [] demonstrated the presence of the mixture from which [] Bagby and A.R., could not be excluded as possible contributors. . . . A DNA result from the sperm fraction of the cutting of the sheet, item 2A8 demonstrated the presence of a mixture with the major to minor profile" and that Bagby was the source of the major DNA and that the minor DNA was A.R.'s. (P-C Tr. pp. 42-42).

17

With respect to the item 2A8 containing a mixture of sperm and non-sperm fraction, the DNA Analyst testified that the probability was one in ninety million that someone other than A.R. was the contributor of the non-sperm fraction. With regard to item 2A3, the DNA Analyst testified that the probability that someone other than Bagby or A.R. contributed the DNA was one in sixty-six million. However, the probability that a person other than Bagby contributed to the sperm fraction in item 2A8 was only one out of ten. Bagby contends that there was no thorough cross-examination on the very low probability of his DNA in item 2A8 at his trial. Regardless, we find that, even if trial counsel followed a strategy of attacking the DNA results and pointing out the low probability of Bagby's DNA on item 2A8, he would still be burdened with the fact that his sperm was found on several parts of his step-daughter's bed sheets. In this regard, we find that Bagby has failed to demonstrate that attacking the DNA evidence would have been a sound strategy employed by trial counsel.

4. *Failure to Confer with Bagby Prior to Trial*

Bagby also alleges that his trial counsel only visited him once in April 2009 when he was first assigned the case. To support his contention, Bagby relies on *McCarty v. State*, 802 N.E.2d 959, 962 (Ind. Ct. App. 2004), *trans. denied*, where the defendant was mentally disabled and his trial counsel failed to discover or investigate that fact; as such, he failed to present that as a mitigating factor during sentencing. *Id*. at 964. On appeal from the denial of his post-conviction relief, this court held that the trial counsel's performance was deficient because he met only once with McCarty, failed to interview his family members, review the court file, obtain his education and mental health records, or consult with a

18

mental health professional. *Id*. at 964-65. However, we find *McCarty* inapposite. At the evidentiary hearing, trial counsel testified that he met with Bagby at least twice, and had conferred with him by mail. Bagby's blanket accusation that he was denied access to information is without merit. Also, he fails to point out what harm befell him as result of the few jail visits.

5. *Failure to Know Exceptions to the Rape Shield Provision*

Lastly, Bagby argues that trial counsel was ineffective for failing to know the exceptions of the Rape Shield Law expressed in *Steward v. State*, 636 N.E.2d 143, 149 (Ind. Ct. App. 1994), *aff'd in relevant part*, 652 N.E.2d 490, 499-500; and in *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir.1993).[5]

> At Bagby's evidentiary hearing, trial counsel testified as follows
>
> Q:    Are you aware of the [*Steward*] case [] ?
> A:    Couldn't tell you if I'd seen it or not.
> Q:    If I may approach your Honor.
> Court: Sure. You don't have to ask me every time, just approach.
>
> ****
> A:    Your honor, rather than wasting time, whether I have read this case before or not. I could read it now and not be able to tell ya [sic]. In thirty years, I have read thousands of them. I assume it exits. I don't assume you made this up.
> Q:    And, um the same question, you can give me the same answer, but I'm just asking. Are you also aware of the [] [*Tague*] Case, which is a federal habeas case.

---

[5] We note that Indiana Evidence Rule 412 (1994) (amended 2013), also known as the Rape Shield Rule, "incorporates the basic principles" of Indiana Code section 35-37-4-4. The Rule "is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes." *Sallee v. State*, 785 N.E.2d 645, 650 (Ind. Ct. App. 2003), *trans. denied*. Pursuant to Evid.R. 412, evidence of the past sexual conduct of a victim or a witness is not admissible, except as:
> (2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded[.]

A: This one I would probably say is a [S]even[th] [C]ircuit case, probably less likely. Um simply because of the venue from where it comes in the federal system, as opposed to the state system. That would be my best guess.

(P-C Tr. pp. 132-33).

Bagby reasons that since trial counsel was unfamiliar with the cases, the jury was only left with one inference that the source of A.R.'s hymeneal tear was caused by him. In *Steward*, the victim accused four other men, apart from the defendant, of molesting her around the same time that she had made accusations against the defendant. *Steward*, 636, N.E 2d. at 149-150. Thus, there was a substantial question as to the identity of the perpetrator. *Id*. Inasmuch as the State offered evidence that the complaining witness's behavior was consistent with a child who had been molested, and also that her behavior improved after she accused the defendant of the molesting, we determined that the jury should also have been informed that the complaining witness accused four others of molesting her around the same time that the defendant had allegedly assaulted her. *Id*. Thus, we concluded that it was error to permit the State to present corroborating evidence linking the defendant to the act of molestation, while precluding the defendant from presenting exculpatory evidence concerning the accusations of prior molestations by men other than the defendant. *Id*.

*Steward* addressed the concept of "partial corroboration," which is the theory that "once there is evidence that sexual contact did occur, the witness's credibility is automatically 'bolstered.'" *Id*. at 149 (quoting *Tague*, 3 F.3d at 1138). "This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be accurate in stating that the defendant was the

20

perpetrator." *Id.* "Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator." *Id.*

Based on the holding of the *Steward* case, Bagby argues that trial counsel should have presented other evidence showing that another person molested A.R. Specifically, Bagby argues that his own potential list of witnesses would have testified to A.R.'s prior sexual history, and their testimony should have been presented after Dr. Haendiges' testimony regarding A.R.'s torn hymen. We disagree. To begin with, Bagby has failed to establish that trial counsel he was unaware of the two cases. At best, the excerpt of the evidentiary hearing showing that trial counsel could not recall the *Steward* or *Tague* cases is inconclusive. At trial, counsel testified that he had read thousands of cases; thus, it was more likely than not that he was aware of them. Even assuming that trial counsel was unaware of the partial corroboration rule, at the evidentiary hearing, Bagby failed to call any of the *potential witnesses* who could have testified to A.R.'s sexual history. In this regard, he has failed to demonstrate what specific evidence would have been offered to rebut the inference that he molested A.R. Lastly, we find that even if direct evidence could have been furnished as to A.R.'s sexual history, the case enjoyed strong forensic support in the form of Bagby's sperm on A.R.'s bed sheets, the location where A.R. stated that she the abuse occurred.

In sum, Bagby fails to overcome the presumption that his trial counsel's performance was effective. Thus, he failed to satisfy his burden of showing that his trial counsel's performance fell below an objective standard of reasonableness and that there is a reasonable possibility that the result of the proceeding would have been different if his

21

counsel had not made the alleged errors.  We therefore find that Bagby was not denied the right to effective assistance of trial counsel.

## CONCLUSION

Based on the foregoing, we conclude that the post-conviction court properly denied Bagby's petition for post-conviction relief.

Affirmed.

MATHIAS, J. and CRONE, J. concur